**KOLLER LAW LLC**
David M. Koller, Esquire
Jordan D. Santo, Esquire                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOMACH MCGATT,** | : | **Civil Action No.** 22-952 |
| **525 Allenby Avenue** | : | |
| **Edgewood, PA 15218** | : | |
|     **Plaintiff,** | : | |
| | : | |
|     v. | : | **Complaint and Jury Demand** |
| | : | |
| **VERIZON MARYLAND LLC d/b/a** | : | |
| **VERIZON,** | : | |
| **1864 York Road** | : | |
| **Lutherville-Timonium, MD 21093** | : | |
| | : | |
| **1 Verizon Way** | : | |
| **Basking Ridge, NJ 07920** | : | |
|     **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Momach McGatt (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Verizon Maryland LLC d/b/a Verizon (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Maryland Fair Employment Practices Act ("FEPA"). In support thereof, Plaintiff avers as follows:

### **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Verizon Maryland LLC d/b/a Verizon is a telecommunications corporation with a location at 1864 York Road, Lutherville-Timonium, MD 21093 and a corporate headquarters located at 1 Verizon Way, Basking Ridge, NJ 07920.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district and because the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII and PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race and disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 531-2021-01717 and was dual filed with the Maryland Commission on Civil Rights.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated March 31, 2022. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is an African American male.

21. On July 10, 2017, Defendant hired Plaintiff in the position of FIOS Service Technician.

22. Plaintiff was well qualified for his position and performed well.

23. At the start of Plaintiff's employment, he noticed that he was treated differently than his Caucasian coworkers.

24. Plaintiff was given the cold shoulder and his Caucasian coworkers intentionally did not hold open the door for him.

25. Plaintiff was also not given his own truck and power tools, but his Caucasian coworkers that were hired after him were immediately given their own truck and power tools.

26. In addition, Plaintiff, along with other newly hired African American FIOS Service Technicians, were referred to as "bus boys" by a Caucasian employee.

27. Plaintiff felt that this reference was racially motivated.

28. Plaintiff complained to Tonicka Gross (African American), First Level Manager, about the racial discrimination that he was subjected to at Defendant.

29. Ms. Gross informed Plaintiff that he could file an official complaint if he wished.

30. However, Ms. Gross warned Plaintiff against doing this, by stating to him that his situation would only worsen if he did submit an official complaint.

31. Plaintiff did not submit a formal complaint due to his fear of retaliation.

32. In March 2019, Plaintiff received a Driving Under the Influence ("DUI") charge in his personal vehicle.

33. Plaintiff notified Defendant of this and spent three (3) days in a detox center.

34. Defendant approved Plaintiff's leave of absence.

35. When Plaintiff returned form the detox center, he gave his temporary license to Donald Duncan (African American), First Level Manager, who made copies of it for Defendant.

36. The temporary license stated that he was part of the interlock program in his personal vehicle.

37. This meant that he had to pass a breathalyzer in order to operate his car.

38. Plaintiff continued to perform his job duties at Defendant without issue, which required him to operate company vehicles.

39. In or around January 2020, Dr. Joseph Anthony, Primary Care Physician , placed Plaintiff on a medical leave of absence due to his disabilities, bursitis in his knee and elbow.

40. Plaintiff was set to return to work on April 14, 2020.

41. Shortly before his return to work, Dr. Anthony determined that Plaintiff had to return to work at light duty.

42. Plaintiff informed Phillip Porter (Caucasian), Union Representative, of his reasonable accommodation for light duty.

43. However, on April 13, 2020, Defendant began an investigation into his driver's license stemming from his DUI charge.

44. Plaintiff was informed that he was suspended indefinitely pending investigation.

45. Therefore, Plaintiff could not return to work from his medical leave of absence.

46. On or around June 20, 2020, Plaintiff discovered that he was terminated, as Fidelity, Defendant's benefits administrator, informed Plaintiff by email that the status of his employment with Defendant changed.

47. Defendant did not notify Plaintiff of his termination until the end of June 2020.

48. Plaintiff was in the Western District of Pennsylvania at the time he was notified of his termination.

49. Defendant alleged that he had to have management sign another document regarding his status of the interlock period to drive a company vehicle.

50. Plaintiff was unaware that he had to have this form signed.

51. Plaintiff appealed his termination with his union twice.

52. Defendant upheld Plaintiff's termination.

53. However, Defendant rehired non-disabled, Caucasian employees who committed worse violations than Plaintiff, such as crashing company vehicles, stealing company time and working under the influence.

54. It is Plaintiff's position that he was discriminated against due to his race and his disability, and retaliated against for requesting reasonable accommodations in violation of the ADA.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

55. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

56. Plaintiff is a member of protected classes in that he is African American.

57. Plaintiff was qualified to perform the job for which he was hired.

58. Plaintiff suffered adverse job actions, including, but not limited to termination.

59. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

60. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

61. Defendants discriminated against Plaintiff on the basis of race.

62. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

63. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

64. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

65. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of his race (African American).

66. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

69. Plaintiff was qualified to perform the job.

70. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

71. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

72. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

73. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

74. The purported reason for Defendant's decision is pretextual.

75. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

76. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

77. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IV – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

78. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

79. Plaintiff is a "qualified individual with a disability" as that term is define under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

80. Plaintiff was qualified to perform the job.

81. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

82. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

83. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

84. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

85. The purported reason for Defendant's decision is pretextual.

86. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

87. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

88. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

89. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

90. Plaintiff engaged in protected activity protected by the ADA when he requested reasonable accommodations.

91. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

92. There exists a causal connection between Plaintiff's participation in the protected activity

and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

93. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

94. Plaintiff engaged in activity protected by the PHRA when he requested reasonable accommodations.

95. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

96. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Momach McGatt, requests that the Court grant him the following relief against Defendants:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g)   Pre and post judgment interest;

(h)   An allowance to compensate for negative tax consequences;

(i)   A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII, the ADA and the PHRA.

(j)   Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)   Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)   Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 29, 2022      **By:**     */s/ David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*